Rasheem M. HOLLAND, Plaintiff,

v.

The CITY OF NEW YORK, Commissioner of Correctional Services, Dora B. Schriro, Deputy of Security Hazel Jennings of R.N.D.C., Warden James Perrino of R.N.D.C., Correctional Officers of R.N.D.C., Claude Luly Shield #3932, Garfield Clarke #14403, John Louden #9250, each sued individually and in his or her official capacity, Defendants.

14 Civ. 5517 (AT)

United States District Court, S.D. New York.

Signed June 24, 2016

Rasheem M. Holland, Rosedale, NY, pro se.

Omar Javed Siddiqi, Theresa Jeanine D'Andrea, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Rasheem M. Holland, a practicing Muslim, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City"), City Department of Correction officials, and individual correction officers, alleging that his constitutional rights were violated when, as a pretrial detainee at Rikers Island, he was subjected to a visual body cavity strip search by a female officer. Am. Compl., ECF No. 21; Def. Mem. 1, 3, ECF No. 34. Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND

Holland alleges that while he was a pretrial detainee on Rikers Island, sometime between 10:00 a.m. and 3:00 p.m. on October 14, 2013, a "fight/cutting" occurred in his housing unit. Am. Compl. ¶¶ 34-35; Def. Mem. 1. The correction officer for Holland's housing area, identified as "Russell" (Shield #6677),[1] ordered that inmates be locked in their cells until further notice. Am. Compl. ¶¶ 36, 38. Hazel Jennings, the Deputy Warden of Security,[2] arrived

---

1. Russell is not a defendant in this action.

2. Jennings' title has since changed to "Chief." *See* Def. Mem. 1; Def. Reply 2, ECF No. 39.

shortly thereafter, with 20 correction officers, and ordered the inmates out of their cells for a "pat frisk." *Id.* ¶ 37. Led by Jennings, the officers escorted the inmates to the "intake area," where they waited in holding pens until Russell and Jennings returned with a list of names of individuals who "were not involved" in the fight, and called out eight names, including Holland's. *Id.* ¶¶ 37–38. Those eight inmates were taken out of the holding pens and escorted into the hallway, where they were lined up against the wall next to the strip search room. *Id.* ¶ 39.

Jennings then "conducted a strip search operation" along with Officers Claude Luly, Garfield Clarke, and John Louden, the correction officer defendants. *Id.* ¶40. Every male inmate was "subjected to a visual body cavity strip frisk search" conducted by Jennings, who is female. *Id.* ¶ 41. When it was Holland's turn to be searched, he "politely asked" Jennings to "please leave the strip search area due to the fact that [Holland is] a registered practicing [M]uslim and... [Muslims] don't strip down naked in front of inmates and especially in front of female officers." *Id.* ¶ 42. Jennings responded, "So what!!! [It's] not like you don't have anything I've never seen before." *Id.* ¶ 43. She ordered Holland to remove his clothing "or there [would] be some repercu[ss]ions." *Id.* Holland complied because he "feared for his life." *Id.* ¶ 44. According to Holland, Jennings "is known... for sending her male officers that work under her command," including Luly, Clarke, and Louden, "to use force" if an inmate does not comply. *Id.* ¶ 45.

Following Jennings' orders, Holland disrobed in front of her, while the male correction officers looked on. *Id.* ¶ 46. Holland "tried to cover [his] private parts the best way [he] could but was told by [ ] Jennings to remove [his] hands from [his] private area." *Id.* Jennings then instructed Hol-

land to "lift his testicles, turn around[,] lift his feet and bend over and spread his buttocks." *Id.* ¶ 47. Holland alleges that Jennings "was not satisfied enough with [him] bending down to spread his buttocks" and requested that he "do it again while coughing" *Id.* ¶ 48. Holland complied. *Id.*

## DISCUSSION

### I. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). On a Rule 12(b)(6) motion, a district court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). A court must accept allegations contained in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

A court will "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) (internal quotation marks and citations omitted). "The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of im-

portant rights because of their lack of legal training.'" *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)). Although courts are "obligated to draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [courts] cannot invent factual allegations that he has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010). Indeed, the pleadings must still contain factual allegations that raise a "right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## II. Prison Litigation Reform Act

 As a threshold matter, Defendants contend that, pursuant to the Prison Litigation Reform Act ("PLRA"), Holland's claims should be dismissed because he seeks only monetary relief and does not allege any physical harm.[3] Def. Mem. 21-22. Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a ... correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). However, although the PLRA bars compensatory damages "for mental or emotional injury," even absent physical injury, Holland may still recover "compensatory damages for the loss of a constitutional liberty interest." *Rosado v. Herard*, No. 12 Civ. 8943, 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014) ("[C]ompensatory damages for intangible deprivations of [the plaintiff's] liberty and personal rights—as 'distinct from pain and suffering, mental anguish, and mental trauma'—are not barred by the PLRA." (citation omitted)); *see also Malik v. City of New York*, No. 11 Civ. 6062, 2012 WL 3345317, at *16 (S.D.N.Y.

Aug. 15, 201) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations."), *report and recommendation adopted*, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012). Such damages "are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Rosado*, 2014 WL 1303513, at *13 (quoting *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir.2004)). Further, the PLRA does not bar Holland from recovering punitive or nominal damages. *See Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir.2002) ("Section 1997e(e) does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages.").

Accordingly, the PLRA does not require dismissal of Holland's claims.[4]

## III. Section 1983 Claims

 "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "[L]imitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The constitutional claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily

---

**3.** *See* Am. Compl. ¶¶ 58-59 (alleging Holland suffered unspecified "pain, anxiety attack[s]," "future psychological damage," "mental anguish," and "emotional distress" as a result of the strip search).

**4.** Indeed, Holland specifically seeks punitive damages and "[t]he abstract value of a constitutional right." Am. Compl. ¶¶ 65, 70.

applied to alleged infringements of fundamental constitutional rights." *Id.* at 349, 107 S.Ct. 2400.[5]

Holland claims that Defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments when Jennings, a female, subjected him to a visual body cavity strip search. The Court addresses each claim in turn. Because Holland's claims against the correction officer defendants—Luly, Clarke, and Louden—are based on their alleged failure to intervene to protect Holland from Jennings' unconstitutional misconduct, the Court begins by addressing Holland's claims under each amendment as against Jennings only. The Court then turns to Holland's claims against the correction officer defendants based on their failure to intervene, against Schriro and Perrino based on their supervisory liability, and against the City based on its municipal liability.

### A. First Amendment

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone,* 482 U.S. at 348, 107 S.Ct. 2400 (citation omitted). "A prisoner's right to practice his religion is, however, not absolute." *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993). To assess a prisoner's free exercise claim, the Court "must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988). Therefore, even assuming Holland can show that his religious beliefs are sincerely held and were infringed, Defendants' misconduct would be "excusable if [it] was supported by legitimate penological interests."[6] *Ford v. McGinnis,* 352

---

**5.** Holland does not specify whether he was a pretrial detainee or a convicted prisoner at the time of the challenged strip search; for purposes of this motion, the Court adopts Defendants' assumption that he was a pretrial detainee. *See* Def. Mem. 5 n.1. Although "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights ... enjoyed by convicted prisoners," *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court has held that the principles limiting the constitutional rights of incarcerated individuals "appl[y] equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546, 99 S.Ct. 1861; *see also id.* at 546 n. 28, 99 S.Ct. 1861 (finding "no reason" to "distinguish[ ]" between pretrial detainees and convicted inmates in reviewing the challenged security practices .... There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order."); *but cf. Kingsley v. Hendrickson,* —— U.S. ——, 135 S.Ct. 2466, 2473,

2475–76, 192 L.Ed.2d 416 (2015) (distinguishing between convicted prisoners and pretrial detainees in concluding that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," but acknowledging that its conclusion "may raise questions about the use of a subjective standard in the context of excessive force claims brought by convicted prisoners"); *Johnston v. Maha,* 460 Fed.Appx. 11, 14 (2d Cir.2012) (finding requirement that convicted prisoners asserting a procedural due process claim show an "atypical and significant hardship" does not apply to pretrial detainees).

**6.** Moreover, "once prison officials put forward a legitimate penological interest to justify an infringement upon a prisoner's religious free exercise, the burden remains with the prisoner to show that these [penological] concerns were irrational." *Ford v. McGinnis,* 352 F.3d 582, 595 (2d Cir.2003) (internal quotation marks omitted); *see also Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

F.3d 582, 595 (2d Cir.2003); *see also O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987))).[7]

"The taboo in the Islamic faith concerning male nudity in the presence of women is well known," and the Court will not "second guess" Holland's allegation that being subjected to a visual body cavity strip search by a female infringed upon this religious belief. *Jean–Laurent v. Lawrence*, No. 12 Civ. 1502, 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir.2004) (explaining that a court must determine whether the refusal to accommodate a religious belief violates the First Amendment "without passing judgment on 'the centrality of different reli-

gious practices,' which is a misguided enterprise that the Supreme Court has called 'akin to the unacceptable business of evaluating the relative merits of differing religious claims'" (citation omitted)). Indeed, at the motion to dismiss stage, courts in this Circuit have found that the religious beliefs of Muslim inmates were infringed based on far less invasive conduct than Holland alleges here. *See, e.g., Jean–Laurent v. Lawrence*, 2013 WL 1129813, at *8 (declining to question Muslim inmate's allegation that being forced to stand in his underwear infringed upon his freedom of religion); *Woodward v. Perez*, No. 12 Civ. 8671, 2014 WL 4276416, at *5 (S.D.N.Y. Aug. 29, 2014) (finding Muslim inmate's religious beliefs infringed based on his "contention that showering in the presence of a female guard violated a central tenet of his religion").[8]

▬▬▬ Defendants, however, challenge Holland's sincerity.[9] *See* Def. Mem.

---

**7.** The Second Circuit has acknowledged that, "[a]lthough *Turner* and *O'Lone* concerned the reasonableness of prison regulations, ... the analysis is the same as to an individual decision to deny a prisoner the ability to engage in some requested religious practice." *Ford*, 352 F.3d at 595 n. 15. Thus, regardless of whether Holland's rights were violated pursuant to an individual decision or a prison rule, regulation or policy, the inquiry is the same. *Id.; see also Salahuddin v. Goord*, 467 F.3d 263, 274 n. 4 (2d Cir.2006) ("An individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise.").

**8.** The Court notes that the continuing vitality of the "substantial burden" requirement for free exercise claims is in question. "It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir.2014) (citation omitted). In any event, the Court finds that Holland meets the substantial burden test, a "not [] particularly onerous task." *Fifth Ave. Presbyterian Church*

*v. City of New York*, No. 01 Civ. 11493, 2004 WL 2471406, at *3 (S.D.N.Y. Oct. 29, 2004) (quoting *McEachin*, 357 F.3d at 202); *see Holland*, 758 F.3d at 221 (analyzing First Amendment claim with the substantial burden requirement because "even assuming the continued vitality of [this requirement], our precedent squarely dictates that [the plaintiff's] religious exercise was unconstitutionally burdened"); *Woodward*, 2014 WL 4276416, at *5 ("On a motion to dismiss, the court's inquiry on substantial burden 'turns on whether [being covered outside the presence of one's wife] 'is considered central or important to [the plaintiff's] practice of Islam." ... Based on [the plaintiff's] contention that showering in the presence of a female guard violated a central tenet of his religion, the Court finds that [the plaintiff] has met the 'not... particularly onerous task' of establishing a substantial burden at the motion to dismiss stage." (quoting *Covington v. Mountries*, No. 13 Civ. 343, 2014 WL 2095159, at *4 (S.D.N.Y. May 20, 2014))).

**9.** In free exercise cases, scrutiny of a plaintiff's sincerity "provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that

15-16. They also assert the defense of qualified immunity. *Id.* 20-21. Because the Court concludes that Holland's free exercise claim is precluded by qualified immunity, the Court need not reach the question of whether his religious beliefs are sincerely held, or whether the strip search was justified by legitimate penological interests.[10] Under the qualified immunity doctrine, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "A defendant will thus not be liable for damages 'if he did not violate clearly established law or if it was objectively reasonable for him to believe that he was not violating clearly established law.'" *Pugh v. Goord,* 571 F.Supp.2d 477, 510 (S.D.N.Y.2008) (quoting *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004)). "A right is clearly established if (1) the law is defined with reasonable

are animated by motives of deception and fraud." *Patrick v. LeFevre,* 745 F.2d 153, 157 (2d Cir.1984). Defendants contend that Holland's original complaint belies his claim of piety because in it he stated that the strip search conducted by Jennings "shattered" his "aspiration[s] of becoming a male nude artist" by making him "fearful[ ] of ever removing certain parts of [his] clothing in front of a female [ever]. Thus hindering [him] from this path of employment." Compl. at 5, ECF No. 1. Given these statements, Defendants argue that Holland "cannot plausibly allege that the practice asserted is a belief that is sincerely held by him." Def. Mem. 15. Holland, in turn, urges the Court to disregard the original complaint because the amended complaint "supersedes the earlier one, in effect starting thing[s] over." Pl. Opp. 14, ECF No. 38.

Although "[t]he liberality with which courts examine *pro se* pleadings does not require a court to 'accept as true allegations that conflict with a plaintiff's prior allegations,'" *Vaughn v. Strickland,* Nos. 12 Civ. 2696, 2013 WL 3481413, at *6 (S.D.N.Y. July 11, 2013), the Court notes that it may decline, at the motion to dismiss stage, to question the sincerity of Holland's beliefs on the basis of his prior pleading. "Prior inconsistent pleadings, though admissible against plaintiff in the case in which they were originally filed as well as in any subsequent litigation involving that party, are controvertible, not conclusive, admissions." *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 395 n. 5 (S.D.N.Y.1988) (citing *United States v. McKeon,* 738 F.2d 26, 31 (2d Cir.1984)); *see also Dweck v. Pacificorp Capital, Inc.,* No. 91Civ. 2095, 1998 WL 88742, at *7 (S.D.N.Y. Mar. 2, 1998) ("It is well-established in the Second Circuit that superseded pleadings, while not judicial admissions *per se,* may be introduced as evidence and considered an admission."). "While there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading, the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." *Barris v. Hamilton,* No. 96 Civ. 9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) (citation omitted). In any event, the Court need not reach the question of Holland's sincerity given its conclusion that Defendants are entitled to qualified immunity on his free exercise claim.

10. Although the Court is permitted to determine whether a constitutional right exists before examining whether it was clearly established as part of the qualified immunity analysis, it declines to do so here. *See Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); *see also Camreta v. Greene,* 563 U.S. 692, 707, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ("In general, courts should think hard, and then think hard again, before turning small cases into large ones.").

clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." *See Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (internal quotation marks omitted); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004) (internal quotation marks and citations omitted).

 Holland alleges that the strip search was conducted by Jennings, the Deputy Warden of Security, right after his housing unit was locked down due to a "fight/cutting" that had just taken place. It is clear, therefore, that this was a search conducted in response to an exigent situation, not a routine or scheduled search. The Court has not found any Supreme Court or Second Circuit precedent establishing the right of a Muslim inmate to not be subjected to a visual strip search by an officer of the opposite sex in such circumstances. Indeed, the courts in this Circuit—and other circuits—that have discussed the rights of Muslim inmates to not be viewed in the nude by the opposite sex suggest that emergency or exigent circumstances may provide a "legitimate penological interest" justifying the infringement upon the inmate's free exercise of religion. *See, e.g., Houston v. Schriro,* No. 11 Civ. 7374, 2014 WL 6694468, at *13 (S.D.N.Y. Nov. 26, 2014) (noting that, in case involving Muslim inmate, the "[d]efendants do not argue that a female officer observing strip searches of a male inmate furthers a legitimate penological interest, particularly in non-emergency situations such as scheduled institutional searches where alternative staffing arrangements can be planned in advance"); *Canedy v. Boardman,* 91 F.3d 30, 34 (7th Cir.1996) (finding the defendants entitled to qualified immunity on Muslim inmate's claim that strip searches in the presence of female guards violated his First Amendment rights because "it was not at all clear" that the plaintiff's "interest in observing Islam's nudity taboos" outweighed the prison's "very strong interest in having its guards observe prisoners at all times and in all situations, and [its other] interest in providing equal employment opportunity to women").

Because the courts in this district, the Second Circuit, and the Supreme Court have not yet addressed the issue, the Court concludes that there was no clearly established rule that, during a lockdown or other exigent situation, a correction officer is prohibited from conducting a strip search and viewing the private parts of a Muslim inmate of the opposite sex, in the manner Holland describes. Therefore, Jennings could not have known whether she was violating Holland's constitutional rights,[11] and is entitled to qualified immunity to the extent that Holland asserts free

---

11. This conclusion does not, of course, excuse Jennings and other prison officials from their duty to "take care to avoid unnecessary humiliation" and to not conduct searches "with so little regard for human dignity and privacy as to be unreasonable." *Storms v. Coughlin,* 600 F.Supp. 1214, 1224 (S.D.N.Y.1984).

exercise claims against her in her individual capacity.[12] *See Askins v. Doe No. 1,* 727 F.3d 248, 254 (2d Cir.2013) ("Qualified immunity is a defense available only to individuals sued in their individual capacity.").

Accordingly, Defendants' motion to dismiss Holland's First Amendment claim against Jennings in her individual capacity is GRANTED.

### B. Fourth Amendment

■■■ The Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion," *Katz v. United States,* 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and it is well-established that its protections extend to prisoners and pretrial detainees. *See Bell,* 441 U.S. at 545, 559, 99 S.Ct. 1861. More than twenty years ago, the Second Circuit recognized that inmates "do retain a limited right to bodily privacy," *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992), and more recently asserted that, "[r]egardless of who performs the search, a visual body cavity search is invasive: 'A strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy.' " *Harris v. Miller,* 818 F.3d 49, 58 (2d Cir.2016) (quoting *Florence v. Bd. of Chosen Freeholders,* 566 U.S. 318, 132 S.Ct. 1510, 1526, 182 L.Ed.2d 566 (2012) (Breyer, J., dissenting)); *see also Canedy v. Boardman,* 16 F.3d 183, 185 (7th Cir. 1994) ("[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy."); *Byrd v. Maricopa Cty. Sheriff's Dep't,* 629 F.3d 1135, 1143 (9th Cir.2011) (en banc) ("[W]e have consistently recognized the frightening and humiliating invasion occasioned by a strip search, even when conducted with all due courtesy." (internal quotation marks omitted)).

■■■ Thus, although the constitutional rights of inmates are restricted because of the "considerations underlying our penal system," *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), *overruled on other grounds, McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable. *See Hodges v. Stanley,* 712 F.2d 34, 35 (2d Cir.1983) (per curiam); *see also Florence,* 132 S.Ct. at 1517 ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."). The reasonableness of a strip search, in turn, "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559, 99 S.Ct. 1861; *see also Harris,* 818 F.3d at 62–63. A strip search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is

---

12. For the same reasons, any claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.,* that could be construed from Holland's allegations, *see Joseph v. Fischer,* No. 08 Civ. 2824, 2009 WL 3321011, at *17 & n. 7 (S.D.N.Y. Oct. 8, 2009) (construing complaint as asserting RLUIPA claim despite *pro se* plaintiff's failure to cite statute), would also

fail. *See Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (finding the defendant prison employees entitled to qualified immunity with respect to inmate's First Amendment and RLUIPA claims because it had not been clearly established by the Second Circuit or Supreme Court that the challenged prison policy violated inmate's rights).

designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318,323 (S.D.N.Y.2006).

 Here, Holland concedes that the strip search procedures he was subjected to are "generally constitutionally permissible." Pl. Opp. 7-8, ECF No. 38.[13] What he objects to is that the strip search was conducted "by the opposite sex." *Id.* 8. Although, generally, the strip search of a male inmate in view of a female correction officer does not, by itself, rise to the level of a constitutional violation, *see Montgomery v. Hall*, No. 11 Civ. 4645, 2013 WL 1982920, at *4 (S.D.N.Y. May 15, 2013), *report and recommendation adopted*, 2013 WL 3816706 (S.D.N.Y. July 22, 2013), strip searches conducted by members of the opposite sex constitute a heightened invasion of privacy in this Circuit and are thus subject to higher scrutiny than those conducted by members of the same sex. *See, e.g., Little v. City of New York*, No. 13 Civ. 3813, 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014); *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir.1980) ("The privacy interest entitled to protection concerns the involuntary viewing of private parts of the body by members of the opposite sex."); *see also Canedy*, 16 F.3d at 185 ("[W]hile all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex."); *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("The desire to shield one's unclothed figure from views of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity.").

"Recognizing that a strip search by an officer of the opposite sex involves a heightened invasion of privacy, courts in this Circuit have distinguished between 'regular' and 'close' viewing and 'incidental' and 'brief viewing of a naked prisoner,'" with the latter being found constitutional. *Little*, 2014 WL 4783006, at *2; *see also, e.g., Correction Officers Benevolent Ass'n v. Kralik*, No. 04 Civ. 2199, 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011) ("More recent cases in this Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited."); *Baker v. Welch*, No. 03 Civ. 2267, 2003 WL 22901051, at *20 (S.D.N.Y. Dec. 10, 2003) ("[T]he balance should be struck to allow incidental and obscured viewing but prohibit regular and close viewing."); *Miles v. Bell*, 621 F.Supp. 51, 67 (D.Conn.1985) (explaining that the Second Circuit's opinion in *Forts v. Ward* "merely emphasizes that in order for inmates to show a violation of their privacy rights, they must show that the 'viewing' by guards of the opposite sex occurs on a regular basis" and distinguishing *Forts* from situations wherein "female guards . . . only occasionally view[ ] male inmates undressed or using the shower and toilet facilities"). The Court does not read these cases to preclude the possibility, however, that a single search may also violate an inmate's right to privacy. *See, e.g., Hayes v. Marriott*, 70 F.3d 1144, 1145, 1147 (10th Cir.1995) (reversing dismissal of complaint where male inmate alleged "that he was subjected to a body cavity search in the presence of over 100 people, including female secretaries and case managers," and recognizing that, "[a]lthough we have stated that the frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and

---

**13.** Cites to Holland's opposition papers refer to the page number assigned by ECF at the top of each page.

showering is an important factor in assessing the constitutionality of prison practices, we have also concluded that a prisoner's right to privacy may be violated by a single search" (citations omitted)).

 Here, although Jennings conducted the visual strip search from a distance of about three feet,[14] and Holland does not allege that she touched him, it is clear that the search was not "indirect," "incidental," or "brief," but rather an invasive search in which Jennings directly viewed the "most private portions" of Holland's body. *Harris*, 818 F.3d at 58. Holland's allegations also make clear, however, that the search took place in the context of an emergency, as part of a security response to a stabbing in Holland's housing unit.[15] For this reason, absent allegations that the search was unnecessarily prolonged or repeated, the Court concludes that Jennings is entitled to qualified immunity on this claim. As in the First Amendment context discussed above, there appear to be no Supreme Court or Second Circuit decisions establishing that, in an emergency situation, inmates have a Fourth Amendment right to be free from strip searches—even body cavity searches—by officers of the opposite sex. Courts in this Circuit and others consistently suggest that exigent circumstances may justify strip searches by officers of the opposite sex. *See, e.g., id.* at 63 ("[C]ross-gender strip searches

of inmates conducted in the absence of an emergency or other exigent circumstances are generally frowned upon."); *Grummett v. Rushen*, 779 F.2d 491, 495–96 (9th Cir. 1985) (holding that, "[e]ven if we conclude that such a situation represents an invasion of privacy rights," the "interest in prison security justifie[d]" female guards' observation of strip searches "in two or three emergency situations"); *Canedy*, 16 F.3d at 187 (recognizing holdings of federal courts "that pat-down searches and occasional or inadvertent sighting by female prison employees of inmates in their cells or open showers do not violate the inmates' right to privacy. But that right is violated where this observation is more intrusive (like a strip search, in the absence of an emergency) or a regular occurrence."); *Letcher v. Turner*, 968 F.2d 508, 510 & n. (5th Cir.1992) (endorsing the principle "that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is required to protect a legitimate government interest such as maintaining security at a correctional facility," particularly where a "disturbance involving 18 or 19 inmates had just taken place"); *cf. Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.1999) (finding complaint sufficiently pleaded Fourth Amendment claim where male inmate alleged female officer conducted multiple strip and body cavity searches "despite the absence of emergency or extraordinary circumstances").[16] Jennings, therefore, is entitled

14. *See* Pl. Opp. 5 (admitting that, "during the strip frisk search defendant Jenning[s] [was] approximately 3-feet away from Plaintiff").

15. Holland also alleges that he was chosen for the strip search from a list of names of inmates "that were not involved" in the fight, Am. Compl. ¶ 38, and reiterates in his opposition that he and those other inmates were "cleared of any wrong doing" after the fight and prior to the search, such that the strip search "was only conducted to humiliate him," and for "other sick reasons," Pl. Opp. 6. However, officers do not need reasonable

suspicion that an inmate may have a concealed weapon or other contraband in order to strip search him. *See Florence*, 132 S.Ct. at 1519–22.

16. *See also Byrd*, 629 F.3d at 1142 (quoting the 2009 National Prison Rape Elimination Commission Report, which "determined that[,] '[t]o prevent abuse,... the [Commission's recommended] standard ... strictly prohibits non-medical staff from conducting cross-gender strip and visual body cavity searches—except in the case of emergency—because of their extraordinarily intrusive na-

to qualified immunity to the extent that Holland asserts Fourth Amendment claims against her in her individual capacity. *See Askins*, 727 F.3d at 254 ("Qualified immunity is a defense available only to individuals sued in their individual capacity.").

Accordingly, Defendants' motion to dismiss Holland's Fourth Amendment claim against Jennings in her individual capacity is GRANTED.

### C. Eighth Amendment

 Holland also alleges that Jennings violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, he alleges that Jennings used excessive force in forcing him to submit to the strip search. Am. Compl. ¶¶ 61, 63; Pl. Opp. 10. Because the Court assumes Holland was a pretrial detainee at the time of the search, *see supra* note 5, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Ordinarily, the standard applied under either clause is identical. *See Caiozzo v. Koreman*, 581 F.3d 63, 69, 72 (2d Cir.2009). To state a traditional Eighth Amendment claim, a plaintiff must allege that (1) the alleged deprivation is "sufficiently serious" under an objective standard; and that (2) the charged officials acted, subjectively, with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Recently, however, the Supreme Court held that, for the excessive force claims of pretrial detainees in particular, "the appropriate standard ... is solely an objective one." *Kingsley*, 135 S.Ct. at 2473. For such claims, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," *id.* and "need not demonstrate that [the] officer was subjectively aware that his use of force was unreasonable," *Ross v. Correction Officers John & Jane Does 1–5*, 610 Fed.Appx. 75, 76 n. 1 (2d Cir.2015). In determining objective reasonableness, which depends on the facts and circumstances of each case, courts may consider a number of factors, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S.Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). For challenges to strip searches in particular, to state an Eighth Amendment violation, courts in this Circuit require that a plaintiff allege that the defendants engaged in egregious conduct. *See, e.g., Vaughn*, 2013 WL 3481413, at *3 (holding that "the alleged abuse caused by the visual cavity search was not severe enough to satisfy the objective seriousness requirement of Eighth Amendment analysis. As discussed, visual cavity searches have been consistently upheld as a legitimate penological

---

ture.' "); *id.* (quoting Standards for Adult Correctional Institutions § 4-4194 (2003), which sets forth the American Correctional Association's recommended standard for cross-gen-

der strip searches, providing that, "except in emergency situations, visual inspections of inmate body cavities are conducted by officers of the same sex, in private").

restriction."); *see also Easley v. Pinnell*, No. 98–16536, 1999 WL 311390, at *1 (9th Cir. May 13, 1999) ("[V]isual anal cavity searches [of male prisoner] conducted within female prison officials' view does not amount to cruel and unusual punishment.").

 Here, the only force Holland alleges is a verbal threat made by Jennings, namely that she threatened that there would be "some repercu[ss]ions" if he did not comply with her order to strip down. Am. Compl. ¶ 43. Holland claims that her threat made him "fear[ ] for his life" because Jennings "is known... for sending her male officers that work under her command ... to use force" if an inmate does not comply. *Id.* ¶¶ 44–45. The Court concludes that Jennings' threat is insufficient to state a claim of excessive force. "Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983." *Ramirez v. Holmes*, 921 F.Supp. 204, 210 (S.D.N.Y.1996) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986)); *see also Vaughn*, 2013 WL 3481413, at *5 (holding Rikers guard's threat that inmates "shut the fuck up" or he would "place a shank on [them]," although "inappropriate and threatening if true, [does] not rise to the level of an Eighth Amendment violation"); *Harris v. Lord*, 957 F.Supp. 471, 475 (S.D.N.Y.1997) ("The law is clear that 'although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.'" (citation omitted)); *Arnold v. Westchester Cty.*, No. 09 Civ. 3727, 2012 WL 336129, at *11 (S.D.N.Y. Feb. 3, 2012) (finding officer's instruction to inmate "to open his anus for a cavity inspection" did not violate the

Eighth Amendment), *report and recommendation adopted*, 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012); *Vaughn*, 2013 WL 3481413, at *3 ("Even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation."). Moreover, the complaint establishes that Jennings' threat was made in response to Holland's initial refusal to comply with the strip search. Am. Compl. ¶¶ 42–43. It cannot be said that her vague, verbal threat was a more than necessary use of force to obtain Holland's compliance. *See, e.g., Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) ("[T]he legitimate penological purpose of strip searches—to discover hidden weapons and contraband—justifies using force necessary to induce compliance by difficult inmates.").

 In addition, insofar as Holland is also claiming sexual abuse or harassment by Jennings, the Second Circuit has concluded that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir.1997). Although it is unclear whether, post-*Kingsley*, the sexual abuse claims of a pretrial detainee must still meet both the objective and subjective prongs of the traditional Eighth Amendment analysis,[17] the Court holds that Holland's allegations fail to meet both. The subjective prong requires a showing that the search was "undertaken maliciously or for the purposes of sexually abusing an inmate," rather than "in a good-faith effort to maintain or restore discipline." *Craw-*

---

**17.** *See Harry v. Suarez*, No. 10 Civ. 6756, 2012 WL 2053533, at *2 n. 3 (S.D.N.Y. June 4, 2012) (recognizing, pre-*Kingsley*, that for pretrial detainees, "the established Eighth

Amendment framework for claims of sexual abuse by prison officials would still provide the appropriate standards for resolving plaintiff's claims").

*ford v. Cuomo,* 796 F.3d 252, 258 (2d Cir. 2015). Given the exigent situation justifying the search, and the absence of any allegations that the search was unnecessarily prolonged or repeated, the complaint fails to make this showing. *See id.* at 257–58 ("[T]he principal inquiry is whether the [officer's conduct] is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate.").

Moreover, Holland does not allege any physical contact or even comments of a sexual nature. To date, in this Circuit, there has been "no case in which a plaintiff ha[s] established an actionable claim of sexual harassment under *Boddie* without having physical contact with the alleged perpetrator," *Vogelfang v. Capra,* 889 F.Supp.2d 489, 508 (S.D.N.Y.2012), or without, at the very least, alleging egregious sexual conduct, *see Smith v. Roberson,* No. 15 Civ. 930, 2016 WL 1056588, at *3 (N.D.N.Y. Mar. 16, 2016) (finding "sufficiently serious" to state an Eighth Amendment violation female detainee's allegations that a guard "chased her, exposed his genitalia to her and threatened her with sexual assault"). Even "significant but episodic physical contact has often been held insufficient to make out an Eighth Amendment claim for sexual harassment." *Vogelfang,* 889 F.Supp.2d at 508; *see also Boddie,* 105 F.3d at 859–61 (affirming as inadequate prisoner's allegations that female correction officer made a possible "pass" at him, "squeezed his hand, touched his penis," called him a "sexy black devil," pressed her breasts against his chest more than once, and pushed her "vagina against [his] penis"). Also, the Second Circuit has declined to find an Eighth Amendment violation where there are no allegations of physical contact, but the alleged verbal conduct is egregious. *See Morales v. Mackalm,* 278 F.3d 126, 132 (2d Cir.2002) (affirming dismissal of Eighth Amendment

claim where female prison employee asked the plaintiff "to have sex with her and to masturbate in front of her and other female staffers"), *abrogated on other grounds by Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), *as recognized in Berry v. Kerik,* 366 F.3d 85, 87–88 (2d Cir.2003). Therefore, Holland's Eighth Amendment claim fails on this ground as well.

Accordingly, Defendants' motion to dismiss Holland's Eighth Amendment claim against Jennings is GRANTED.

### D. Due Process Under the Fourteenth Amendment

Finally, Holland alleges that Jennings violated his "right to freedom from deprivation of liberty without due process." Am. Compl. ¶ 56. Although it is unclear whether Holland is making a claim of procedural or substantive due process, or both, given his *pro se* status, the Court will consider his complaint to be making both claims.

### 1. Substantive Due Process

▋ "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Kia P. v. McIntyre,* 235 F.3d 749, 757–58 (2d Cir.2000) (quoting *Conn v. Gabbert,* 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)); *see also Velez v. Levy,* 401 F.3d 75, 94 (2d Cir.2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."). This is so because, as the Supreme Court has observed, "the guideposts for responsible decisionmaking" in the "unchartered area" of substantive due process "are scarce and open-ended." *Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 127

L.Ed.2d 114 (1994) (plurality opinion). As a result, the Supreme Court has "always been reluctant to expand the concept of substantive due process" and has limited the availability of such claims to those which are not covered under other amendments. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (internal quotation marks omitted)). The Court concludes, therefore, that, because all of Holland's constitutional claims are covered under either First, Fourth or Eighth Amendment standards, he does not have an additional substantive due process cause of action under the Fourteenth Amendment. *See Velez*, 401 F.3d at 94 (holding that the "plaintiff's substantive due process claim is either subsumed in her more particularized allegations" raising First Amendment and Equal Protection Clause claims, "or must fail.").

Accordingly, to the extent that Holland raises a substantive due process claim, it is DISMISSED.

### 2. Procedural Due Process

Holland alleges that Jennings strip searched him in violation of prison policy, *see* Am. Compl. 2, which the Court construes as an attempt to assert a procedural due process claim. To state a proce-

dural due process claim, Holland "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir.2001).[18]

The policy Holland claims Jennings violated is New York City Department of Correction Directive 4508, *see* Pl. Opp. 2, which provides that "only personnel of the same gender (meaning 'sex') as the inmate being searched and who are essential for security reasons shall be present during a Strip Frisk Without A Body Cavity Search. Whenever possible, a supervisory officer shall be present during such searches." *Id.* 24. Defendants contend that Directive 4508 was not in effect in 2013 at the time of the challenged strip search, but that, rather, another policy was in effect that contains nearly identical language but also adds the qualifier, "[a]bsent an emergency, only personnel of the same sex as the inmate ..." ECF No. 39-1 (emphasis added); *see* Def. Reply 3. Regardless of which policy applies, however, "there is no federal constitutional liberty interest in having ... prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003). Even assuming that Directive 4508 was in effect at the time of the search and Jennings violated it, such an allegation does not give rise to liability under Section 1983. It is well settled that "a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regula-

---

18. Convicted prisoners must also show that the liberty deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472,484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In this Circuit, however, the "atypical and significant hardship" requirement does not apply to pretrial detainees. *See Johnston*, 460 Fed.Appx. at 14 ("The District Court erred in applying *Sandin* ... [to] a pretrial detainee."); *Iqbal v. Hasty*,

490 F.3d 143, 163 (2d Cir.2007) ("*Sandin* does not apply to pretrial detainees."), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Benjamin v. Kerik*, 102 F.Supp.2d 157, 172 (S.D.N.Y.2000) (concluding that *Sandin*'s "justification for limiting a convicted inmate's rights ... does not apply to pretrial detainees"), *aff'd sub nom. Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir.2001).

tions or state law." *Rivera v. Wohlrab*, 232 F.Supp.2d 117, 123 (S.D.N.Y.2002). An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990); *see also Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) ("To the extent that [plaintiff] claims defendants failed to follow prison regulations, such as directives concerning the implementation of disturbance control plans . . . , these state law violations are not cognizable under § 1983."); *Doe v. Conn. Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiffs] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983."); *Lopez v. Reynolds*, 998 F.Supp. 252, 259 (W.D.N.Y.1997) ("A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements.").

Accordingly, to the extent that Holland raises a procedural due process claim, it is DISMISSED.

### E. Failure to Intervene

 Holland alleges that Correction Officers Luly, Clarke, and Louden failed to intervene when they observed Jennings violating Holland's rights. Am. Compl. ¶¶ 20, 25, 30. Correction officers can be held liable under Section 1983 for not intervening to protect the constitutional rights of inmates from infringement by other officers. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988); *Anderson*

*v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). However, liability attaches only when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citing *O'Neill*, 839 F.2d at 11–12). "If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends." *Feinberg v. City of New York*, No. 99 Civ. 12127, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); *see also Usavage v. Port Auth. of New York & New Jersey*, 932 F.Supp.2d 575, 599 (S.D.N.Y.2013) ("Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." (internal quotation marks omitted)). Thus, because the Court holds that Holland has failed to plead an Eighth Amendment violation, the correction officer defendants cannot be held liable for failing to intervene. Further, an officer is entitled to qualified immunity unless his failure to intercede was under "circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate [the plaintiff's] rights." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir.1997). The Court's conclusion that Holland's First and Fourth Amendment claims against Jennings (in her individual capacity) are precluded by qualified immunity applies equally to Luly, Clarke, and Louden, because they too would not reasonably have known that Holland's constitutional rights were being violated. *See, e.g., Ricciuti*, 124 F.3d at 129 ("A police officer cannot be held liable in damages for failure to intercede unless such failure per-

mitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727)).

Accordingly, Defendants' motion to dismiss Holland's failure to intervene claim against Luly, Clarke, and Louden is GRANTED.

### F. Claims Against Schriro and Perrino

Holland also alleges constitutional violations by former Correction Commissioner Dora B. Schriro and Warden James Perrino, who were not present at the challenged strip search. It is well settled that supervisors cannot be held liable in a Section 1983 suit solely on a theory of *respondeat superior*. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (requiring "a showing of more than the linkage in the prison chain of command" to hold a prison official liable under Section 1983). To state a claim under Section 1983, a plaintiff must allege the personal involvement of each defendant. *See, e.g., Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted). Rather, a plaintiff in a Section 1983 action must show that the supervisor was personally involved in a constitutional violation by either (1) directly participating in the violation; (2) failing to remedy the violation after learning of it through a report or appeal; (3) creating a custom or policy

fostering the violation or allowing the custom or policy to continue after learning about it; (4) being grossly negligent in supervising the officers involved; or (5) exhibiting deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In *Ashcroft v. Iqbal*, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676, 129 S.Ct. 1937. The Second Circuit has not resolved whether *Iqbal* "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir.2013); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n. 14 (2d Cir.2012) (observing that the limitation on supervisory liability in *Iqbal* "has, of course, engendered conflict within our own Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*"). Regardless, the Court concludes that Holland has failed to plead the requisite personal involvement to sustain his claims against Schriro and Perrino. *See Grullon*, 720 F.3d at 139 (declining to resolve *Colon'* s tension with *Iqbal* while affirming dismissal under *Colon* analysis).

Holland's claims against Schriro and Perrino, which vaguely allege that they "pursued a policy and custom of deliberate indifference" in the "hiring, training and supervision of" Jennings and the correction officer defendants, Am. Compl. ¶¶ 67-68,[19] appear to fail under the third,

---

19. *See also* Am. Compl. ¶¶ 17 (alleging that "defendant supervisors failed to train, supervise, discipline and control defendant Jenning[s]"), 9 (alleging that "Commissioner and Warden knew of the individual correctional officers['] tendencies to make unlawful searches").

fourth, and fifth *Colon* categories. Without more than the allegations related to the single strip search incident that forms the basis of the complaint, however, Holland's vague allegations as to Schriro and Perrino amount to "nothing more than a bare assertion" that they were supervisors of Jennings and the correction officer defendants, which is insufficient to state a Section 1983 claim. *Bridgewater v. Taylor*, 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *see also Parris v. New York State Dep't Corr. Servs.*, 947 F.Supp.2d 354, 364 (S.D.N.Y. 2013) ("Allegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983."); *Koehl v. Bernstein*, No. 10 Civ. 3808, 2011 WL 2436817, at *19 (S.D.N.Y. June 17, 2011) ("[C]onclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement."), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011); *Burgis v. Dep't of Sanitation City of New York*, No. 13 Civ. 1011, 2014 WL 1303447, at *6 (S.D.N.Y. Mar. 31, 2014) ("Courts have repeatedly held that including boilerplate language alleging the existence of a policy, without factual allegations to support it, is not enough at the pleading stage."). "To the extent that the complaint attempts to assert a failure-to-supervise claim, moreover, it lacks any hint that [Schriro and Perrino] acted with deliberate indifference to the possibility that [their] subordinates would violate [Holland's] constitutional rights." *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir.2009) (affirming dismissal where conclusory allegations that corrections commissioner failed to supervise and train subordinates failed to establish the requisite personal involvement).

Accordingly, Defendants' motion to dismiss Holland's Section 1983 claims against Schriro and Perrino is GRANTED.

### G. Claims Against Individual Defendants in Their Official Capacities

■■■ To the extent that there are any remaining claims against Schriro, Perrino, Jennings, Luly, Clarke, and Louden in their official capacities, the Court concludes that those claims are redundant and duplicative of Holland's claims against the City and should, therefore, be dismissed. "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir.2005); *see also Davis v. Stratton*, 360 Fed.Appx. 182, 183 (2d Cir. 2010) ("The suit against the mayor and police chief in their official capacities is essentially a suit against the City... because in a suit against a public entity, naming officials of the public entity in their official capacities 'add[s] nothing to the suit.'" (citation omitted)).

Accordingly, Defendants' motion to dismiss Holland's Section 1983 claims against Schriro, Perrino, Jennings, Luly, Clarke, and Louden in their official capacities is GRANTED.

### H. Claims Against the City

■■■■ Holland's Section 1983 claims against the City must also be dismissed. To state a Section 1983 claim against a municipality, a plaintiff must assert that the alleged violations were committed pursuant to an official policy, practice, or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff can meet this requirement by identifying a particular decision or action by someone who is a final policymaker for the governmental entity being sued. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional de-

privations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004) (internal quotation marks omitted). Generally, however, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Triano v. Town of Harrison,* 895 F.Supp.2d 526, 532 (S.D.N.Y.2012) (internal alteration omitted).

As a threshold matter, "the City cannot be liable under *Monell* where [p]laintiff cannot establish a violation of his constitutional rights." *Askins,* 727 F.3d at 253 (internal quotation marks omitted). Thus, because the Court concludes that Holland has failed to plead an Eighth Amendment claim, the City cannot be held liable on that claim. By contrast, the Court's holding that Holland's First and Fourth Amendment claims against Jennings and the correction officer defendants in their individual capacities are precluded by qualified immunity does not bar <u>him</u> from pursuing those claims against the City. *See id.* at 254 ("[T]he entitlement of the individual municipal actors to qualified immunity ... is [ ] irrelevant to the liability of the municipality. Qualified immunity is a defense available only to individuals sued in their individual capacity."); *Pinter v. City of New York,* 976 F.Supp.2d 539, 557 (S.D.N.Y.2013) (concluding that grant of qualified immunity to individual defendants "does not by itself bar [the plaintiff's] false arrest and malicious prosecution claims against the City"). However, Holland has pleaded no facts to support a *Monell* claim against the City. The only allegations Holland makes against the City are the same allegations he asserts against Schriro and Perrino—that the City "knew of the individual correctional officers['] tendencies to make unlawful searches," and

that, "in the hiring, training and supervision of ... Luly, Louden, Clarke and Jennings," the City has "pursued a policy and custom of deliberate indifference to the rights of persons in City jails," which directly and proximately resulted in the violation of Holland's constitutional rights. Am. Compl. ¶¶ 9, 67-68. These allegations are entirely conclusory and must, therefore, be disregarded. Holland has not identified any specific municipal policy or custom that caused his injuries. Moreover, "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations. *Davis v. City of New York,* No. 07 Civ. 1395, 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008); *see also Oparaji v. City of New York,* No. 96 Civ. 6233, 1997 WL 139160, at *3 (E.D.N.Y. Mar. 21, 1997) (finding that the "complaint, even if read liberally, [did] not contain a single fact in support of [plaintiff's] conclusory allegation" where he alleged "only that the City had a policy, practice or custom of failing to adequately screen, hire and train police officers which resulted in the violation of his constitutional rights").

Accordingly, Defendants' motion to dismiss Holland's Section 1983 claims against the City is GRANTED.

## IV. Pendent State Law Claims

Holland also alleges violations of New York state law. *See, e.g.,* Am. Compl. 2. Though he does not specify which causes of action he is pursuing, at least one of his claims appears to be for negligent hiring and retention. Am. Compl. ¶¶ 7, 17, 22, 27, 32. Having dismissed his federal law claims, the Court declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c). *See Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v.*

*Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 727 (2d Cir.2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Powell v. Gardner,* 891 F.2d 1039, 1047 (2d Cir.1989) ("[I]n light of the proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over [the plaintiff's] state-law claims against the County.").

Accordingly, Holland's state law claims are DISMISSED without prejudice to renewal in state court.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to (1) mail a copy of this order and all unpublished decisions cited therein to Plaintiff *pro se* and (2) close the case.

SO ORDERED.

