ELIZABETH A. WOLFORD, United States District Judge *313 INTRODUCTION
Plaintiff Scott Boyler ("Plaintiff") commenced this civil rights action against Captain Joseph Leo ("Captain Leo") and Detective Brian Lakso ("Detective Lakso") of the City of Lackawanna Police Department (collectively, the "Individual Defendants"), and the City of Lackawanna (the "City") (collectively, "Defendants"), alleging causes of action under 42 U.S.C. § 1983 and New York State common law. (Dkt. 1). Specifically, Plaintiff claims that he was subjected to an unlawful arrest and criminal prosecution after engaging in protected speech under the First Amendment of the United States Constitution. Plaintiff asserts six claims pursuant to § 1983 against the Individual Defendants, and four common law claims against all Defendants. Plaintiff's common law claims against the City are premised upon the doctrine of respondeat superior.
Presently before the Court is Defendants' motion for summary judgment. (Dkt. 27). For the following reasons, Defendants' motion is granted, and Plaintiff's complaint is dismissed.
BACKGROUND [1]
Prior to the events underlying this action, Plaintiff "was arrested on at least two occasions and had interaction[s] with Captain Leo." (Dkt. 27-2 at ¶ 11; Dkt. 30-1 at ¶ 11). Plaintiff was displeased with his treatment by police officials during these interactions, and claimed that Captain Leo had "unlawfully confiscated" some of his personal belongings. (Id. ). As a result, Plaintiff created a website and a Facebook page where he expressed various opinions regarding the City of Lackawanna, law enforcement officials, and various authority figures, including Captain Leo. (Id. ). The website was named "Lackawanna, New York police corruption." (Dkt. 27-9 at 19 (Plaintiff's N.Y. Gen. Mun. Law § 50-h examination) ).
Plaintiff made various postings, including some that described Captain Leo as a "liar," "a sociopath, a [k]leptomaniac," "a compulsive liar," "abusive," "tormentive," and "sick." (Id. at 20). Plaintiff also posted, "you [referring to Captain Leo] and your disgusting pigpen at parasite hall are going to pay for your crime." (Dkt. 27-2 at ¶ 16; Dkt. 30-1 at ¶ 16). Plaintiff indicated that he was going to "enjoy punishing [Captain Leo] and [y]our gang in every conceivable way." (Dkt. 27-2 at ¶ 17; Dkt. 30-1 at ¶ 17; see Dkt. 27-10 at 19). Plaintiff also posted photographs of Captain Leo and called him vulgar and derogatory names, such as a "psychopathic pig fucker." (Dkt. 27-10 at 18; see Dkt. 27-2 at ¶ 15; Dkt. 30-1 at ¶ 15). Plaintiff invited others to submit comments about Captain Leo online as well. (Dkt. 27-10 at 20). Plaintiff also testified that had Captain Leo read the posted statements, he "might" find them annoying. (Id. at 19-20; see Dkt. 27-2 at ¶ 18; Dkt. 30-1 at ¶ 18).
Captain Leo testified that he does not "go on the websites," maintain a Facebook account, or frequent the Internet, and that it was an unidentified individual who initially brought these postings to his attention. (Dkt. 27-17 at 9-10; see Dkt. 27-2 at ¶ 22; Dkt. 30-1 at ¶ 22). Captain Leo then approached Detective Lakso with a screenshot of one of Plaintiff's posts, and requested that Detective Lakso review the website and Facebook postings. (Dkt. 27-2 *314 at ¶¶ 23-24; Dkt. 30-1 at ¶¶ 23-24). Detective Lakso reviewed the website and Facebook postings in Captain Leo's presence, and had Captain Leo review certain excerpts from the web pages. (Dkt. 27-17 at 9-11, 14-15).
Captain Leo testified that he believed the posted statements were annoying, harassing, and threatening. (Dkt. 27-17 at 22). Detective Lakso testified that, on previous occasions, he had filed criminal charges for aggravation in the second degree based upon communications transmitted over the Internet. (Dkt. 27-18 at 8-12). On January 2, 2014, Captain Leo lodged a criminal complaint with the City of Lackawanna Police Department, asserting allegations of aggravated harassment in the second degree. (Dkt. 27-2 at ¶ 38; Dkt. 30-1 at ¶ 38). Detective Lakso drafted the complaint and reviewed it with Captain Leo before he signed it. (Dkt. 27-18 at 14-15; see Dkt. 27-14 (criminal complaint with attached screenshots) ). Detective Lakso completed a police report on the same day. (Id. ; see Dkt. 27-14 (Detective Lakso's police report) ). Detective Lakso also submitted the criminal complaint for review by a state court judge. (Dkt. 27-18 at 25).
On January 3, 2014, Lackawanna City Court Judge Frederic Marrano issued a warrant for Plaintiff's arrest pursuant to the provisions of the second degree aggravated harassment statute. (Dkt. 27-16). Subsequently, law enforcement officials in the Village of Angola, New York, arrested Plaintiff on April 30, 2014. (Dkt. 27-10 at 24-25).[2] Plaintiff appeared before Lackawanna City Court Judge Norman LeBlanc on May 1, 2014, where he entered a plea of not guilty. (Dkt. 27-2 at ¶ 43; Dkt. 30-1 at ¶ 43). On May 13, 2014, the New York Court of Appeals struck down the aggravated harassment in the second degree provision at issue as unconstitutionally vague under the New York State and Federal Constitutions. See People v. Golb, 23 N.Y.3d 455, 466-68, 991 N.Y.S.2d 792, 15 N.E.3d 805 (2014).[3] On May 27, 2014, the prosecution moved to voluntarily dismiss Plaintiff's charges during a proceeding in Lackawanna City Court, and Judge Marrano dismissed the case. (Dkt. 27-21; see Dkt. 27-2 at ¶ 46; Dkt. 30-1 at ¶ 46).
PROCEDURAL HISTORY
On April 23, 2015, Plaintiff commenced this action against Defendants, alleging various causes of action for the deprivation of his constitutional rights pursuant to § 1983, as well as several claims under New York State common law. (Dkt. 1). Under the framework of § 1983, Plaintiff asserts claims for malicious prosecution (first cause of action), false arrest (second cause of action), failure to intercede to prevent an unconstitutional act (third cause of action), violation of his right to free speech (fourth cause of action), assault (fifth cause of action), and battery (sixth cause of action). (Dkt. 1 at 6-11). These claims are only asserted against the Individual Defendants. Under state common law principles, Plaintiff alleges companion claims for malicious prosecution (seventh cause of action), false arrest (eighth cause of action), assault (ninth cause of action), and battery (tenth cause of action). The common law claims are asserted against all Defendants.[4] Defendants answered the complaint, *315 and raised a number of affirmative defenses, including the doctrine of qualified immunity. (Dkt. 3). After discovery was completed, Defendants filed the instant motion requesting that summary judgment be granted in their favor. (Dkt. 27). Plaintiff opposes the motion. (Dkt. 30). Oral argument was held before the undersigned on December 13, 2017, at which time the Court reserved decision.
DISCUSSION
I. Defendants' Motion For Summary Judgment
A. Legal Standard
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).
"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.' " Rowe v. Wal-Mart Stores, Inc., 11 F.Supp.2d 265, 266 (W.D.N.Y. 1998). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial .' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec., 475 U.S. at 586-87, 106 S.Ct. 1348 ). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
*316 B. Any § 1983 Claims Asserted Against the Individual Defendants in their Official Capacity Must be Dismissed
Defendants argue that Plaintiff's § 1983 claims asserted against the Individual Defendants, while acting in their official capacity, must be dismissed pursuant to the Eleventh Amendment. (Dkt. 27-23 at 10-11). "[C]laims against municipal officials in their official capacities are really claims against the municipality...." Wallikas v. Harder , 67 F.Supp.2d 82, 83 (N.D.N.Y. 1999) ; see Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." (quotation marks and citation omitted) ). "More is required in an official-capacity action, ... for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." Graham, 473 U.S. at 166, 105 S.Ct. 3099 (quotation marks and citations omitted). A § 1983 claim "against a[ municipal] official sued in his official capacity ... cannot be sustained unless the plaintiff shows that the violation of [his or] her federal rights was the result of a municipal custom or policy." Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012).
"Because [P]laintiff has offered no evidence that the actions of the [Individual Defendants] were taken pursuant to a municipal policy or custom, summary judgment with respect to the [Individual Defendants] in their official capacities is appropriate" with regard to the § 1983 causes of action, and those claims are dismissed without prejudice. Hamilton v. City of New Haven, 213 F.Supp.2d 125, 132 (D. Conn. 2002) ; see Hudson v. Lockhart, 554 F.Supp.2d 494, 497 (S.D.N.Y. 2008) ("[The plaintiff]'s § 1983 claim against the named [d]efendants in their official capacity must be dismissed as well because he has failed to state that the alleged violation of the constitutional rights at issue derived from a municipal policy or practice."). However, "[n]o municipal custom or policy need be proven to establish the liability of the City for violation of ... state law, for '[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.' " Lore, 670 F.3d at 168 (quoting Tango v. Tulevech, 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983) ); Breitkopf v. Gentile, 41 F.Supp.3d 220, 250 n.21 (E.D.N.Y. 2014) (same); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("States are protected by the Eleventh Amendment while municipalities are not...."). As such, to the extent that Plaintiff's state common law claims are asserted against the Individual Defendants in their official capacity, they are not barred by the Eleventh Amendment. The Court now turns to the Individual Defendants' defense of qualified immunity as applied to Plaintiff's first, second, and fourth causes of action.
C. The Individual Defendants are Entitled to Qualified Immunity as to the First, Second, and Fourth Causes of Action Asserted Against Them in Their Individual Capacity
1. Plaintiff's Fourth Cause of Action for the Violation of his First Amendment Right to Free Speech Under § 1983
"The qualified-immunity doctrine shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established *317 statutory or constitutional rights of which a reasonable person would have known.' " X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' " McGowan v. United States, 825 F.3d 118, 124 (2d Cir. 2016) (quoting Wood v. Moss, --- U.S. ----, 134 S.Ct. 2056, 2066-67, 188 L.Ed.2d 1039 (2014) ).[5] "In determining whether a right was so clearly established, the Supreme Court has emphasized that the 'dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted .' " Barboza v. D'Agata, 676 Fed.Appx. 9, 12 (2d Cir. 2017) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ). "In making this determination, [this Court must] consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." McGowan, 825 F.3d at 124. "The second prong of the standard means that officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken,' which 'protect[s] all but the plainly incompetent or those who knowingly violate the law.' " Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017) (quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ).
At one time, courts were required to undertake the two-prong inquiry in strict sequence. See Saucier, 533 U.S. at 201, 121 S.Ct. 2151 ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."). However, the Supreme Court has since retreated from this rigid approach. While acknowledging that "the sequence set forth [in Saucier ] is often appropriate," the Court held that "it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light *318 of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In the interests of efficiency, the Court will address the second prong first, which the Court finds to be dispositive.
Defendants argue that even if the Individual Defendants' conduct violated Plaintiff's federal rights, those rights were not clearly established at the time of their actions. (Dkt. 27-23 at 12-13). Specifically, Defendants argue that given the alarming nature and substance of the posts, the Individual Defendants acted reasonably in determining that Plaintiff had violated the aggravated harassment statute. (See id. ). Plaintiff responds that Defendants' position is incorrect because the facts of the instant matter involve politically-charged posts to a website, and thus, are not akin to "direct communication by email" or cases involving threats of bodily harm. (Dkt. 30 at 8-12).
At the time the criminal complaint was filed and Plaintiff was arrested, the language found in New York's second-degree aggravated harassment statute provided:
A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she ... communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm.
N.Y. Penal Law § 240.30(1)(a). The criminal complaint in this action was premised upon this subdivision. (See Dkt. 27-11 at 16; Dkt. 27-16). Notably, the criminal complaint was filed on January 2, 2014 (Dkt. 27-11 at 16), and the arrest warrant was issued on January 3, 2014 (Dkt. 27-16). Law enforcement officials arrested Plaintiff a few months later in April 2014. (Dkt. 27-10 at 24-25). However, on May 13, 2014, the New York Court of Appeals struck down this statutory provision as facially unconstitutional under the New York State and Federal Constitutions. See People v. Golb, 23 N.Y.3d 455, 466-68, 991 N.Y.S.2d 792, 15 N.E.3d 805 (2014). As noted above, soon after Golb was decided, the prosecution voluntarily dismissed Plaintiff's charges. (Dkt. 27-21).
Plaintiff argues that even though all of the materially relevant acts giving rise to his claims in this action were completed prior to the Golb decision, another New York State Court of Appeals decision from 2003 "clearly established the law in this area." (Dkt. 30 at 11). Plaintiff refers to People v. Mangano, 100 N.Y.2d 569, 764 N.Y.S.2d 379, 796 N.E.2d 470 (2003), where the defendant left five "crude and offensive" messages for the Village of Ossining's Parking Violation Bureau after she received parking tickets. See id. at 570-71, 764 N.Y.S.2d 379, 796 N.E.2d 470. The charges were based on the same statutory provision at issue here, but the New York State Court of Appeals did not strike down the statute as unconstitutional. Instead, the court distinguished its prior precedent and held that the defendant's messages did not fall within any of the categories of proscribable speech or conduct. Id. at 571, 764 N.Y.S.2d 379, 796 N.E.2d 470. Specifically, the court stated that while "defendant's messages were crude and offensive," they were "made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public." Id.
Plaintiff's argument has already been rejected by the Second Circuit in Barboza v. D'Agata, 676 Fed.Appx. 9 (2d Cir. 2017). In Barboza, the Second Circuit noted that Mangano merely distinguished prior precedent in finding that the defendant's speech was not proscribable under the circumstances *319 presented. Id. at 13. The Second Circuit also emphasized that the Mangano defendant transmitted the offensive comments "through a channel 'set up for the purpose ... of receiving complaints from the public.' " Id. at 13 (quoting Mangano, 100 N.Y.2d at 571, 764 N.Y.S.2d 379, 796 N.E.2d 470 ). Barboza then went on to conclude that "neither Mangano nor any other case clearly established such a First Amendment right at the time of the events at issue," and that it was only after Golb was decided that the issue was clarified. Id. at 13-14 ; see Vives v. City of New York, 405 F.3d 115, 118 n.6 (2d Cir. 2005) ("In Mangano, ... the New York Court of Appeals did not declare section 240.30(1) unconstitutional."). Accordingly, Plaintiff's reliance upon pre- Golb New York decisional law is misplaced.
Plaintiff also attempts to distinguish this case on the ground that he posted the communications at issue on public websites instead of transmitting them by email or some other more direct method. (Dkt. 30 at 9-10). However, again, the Second Circuit has already determined that website communications fall within the ambit of the then-existing aggravated harassment statute. InPacherille v. County of Otsego, No. 3:13-CV-1282, 2014 WL 11515848 (N.D.N.Y. Nov. 20, 2014), aff'd sub nom. Pacherille v. Muehl, 619 Fed.Appx. 18 (2d Cir. 2015), the plaintiff had created a website entitled "coophallofshame.com," which was very critical of an Otsego County Court Judge and the Otsego County District Attorney, among others. Id. at *2. Based on the content of the website posts, a search warrant application was filed and then executed. Id. at *2, *9-10. The district court ultimately determined that the allegations in the search warrant application set forth the necessary probable cause "to believe that [the p]laintiff-or someone at his home-transmitted a form of written communication (the website's written postings) with intent to harass, annoy, threaten, or alarm [the defendant], and that the communication was done in a manner likely to cause annoyance or alarm." Id. at *10.
In affirming the district court's decision, the Second Circuit determined that the defendants were "entitled to qualified immunity" for the "claims arising from the search and arrest warrants," in part, because "it was objectively reasonable for them to conclude that they could rely on written communications-in this case, the posting of a website-to establish probable cause for the warrants." Pacherille v. Muehl, 619 Fed.Appx. 18, 19 (2d Cir. 2015). Thus, Plaintiff's argument that the communications are distinguishable as web postings lacks merit. Plaintiff directed these communications at Captain Leo by posting them on public websites. Thus, the Individual Defendants could rely upon them in determining whether probable cause existed to arrest Plaintiff for aggravated harassment in the second degree.
Plaintiff and Defendants argue that the district court decision in Barboza v. D'Agata, 151 F.Supp.3d 363 (S.D.N.Y. 2015) supports their respective positions. Barboza involved the use of politically-charged speech on the back of a parking ticket. Id. at 370. Specifically, the plaintiff in that case argued that the defendants "violated his right to be free from arrest without probable cause and his right to be free from arrest in retaliation for writing 'fuck your shitty town bitches' on a parking ticket which he asserts is protected speech." Id. The district court found, first, that the arrest was a violation of free speech. Id. The court then found that while § 240.30 was not facially unconstitutional at the time, the plaintiff's right to free speech was "clearly established" because, as applied to him, the plaintiff had a right to use such speech in criticizing governmental officials. Id. at 371-72 (relying, in *320 part, on Mangano ). However, the court then determined that it was still objectively reasonable for the officer defendants to file the charges and execute the arrest because the prosecutor instructed them toward this end, and because both the prosecutor and the reviewing judge approved of the charges. See id. at 372-73.
Defendants posit that Barboza generally supports their position under the objective reasonableness standard. (Dkt. 27-23 at 23). Plaintiff counters by arguing that the Barboza rationale does not apply to the instant facts where the Individual Defendants were never ordered by a prosecutor to file the charges at issue. (Dkt. 30 at 11-12). However, in affirming the district court's decision, the Second Circuit determined that the defendants were entitled to qualified immunity, not merely because the prosecutor ordered the charges to be filed, but because the First Amendment right had not yet been clearly established at the time of the allegedly wrongful conduct. See Barboza, 676 Fed.Appx. at 15. Specifically, the Second Circuit noted that "[o]n the totality of these circumstances, we cannot conclude that no reasonable officer in the position of [the defendants] could have believed that [the plaintiff] could be arrested for aggravated harassment without violating the First Amendment." Id. The court emphasized that at the time, the New York Court of Appeals "had recognized both permissible and impermissible applications of the statute," and thus, under these circumstances, the constitutionality of § 240.30 was not "beyond debate." Id. This rationale is equally applicable to the instant case.
Plaintiff also appears to suggest that Captain Leo should have "research[ed] the constitutional right of free speech before filing the charges." (Dkt. 30 at 8). However, "[i]n determining whether an officer is entitled to qualified immunity, [t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." Amore v. Novarro, 624 F.3d 522, 533-34 (2d Cir. 2010) (quotation marks and citation omitted); see Pacherille, 2014 WL 11515848, at *10 ("[A]n objectively reasonable officer would not have known, or grasped, the nuances of the interplay between the dictates of N.Y. Penal Law § 240.30(1)(a) and the First Amendment right to free speech."); see also Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 103 (2d Cir. 2003) ("Absent evidence that the ordinance authorized conduct which is patently violative of fundamental constitutional principles[,] ... an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability." (quotation marks and citation omitted) ).
It is worth noting that "[a]n officer is not automatically entitled to qualified immunity simply because prosecutors or magistrates approve a challenged arrest; he can still be subject to suit if 'it is obvious that no reasonably competent officer would have concluded' that a lawful arrest could be made." Barboza, 676 Fed.Appx. at 15 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ). However, "the threshold for establishing this exception is a high one." Messerschmidt v. Millender, 565 U.S. 535, 547, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). Here, Detective Lakso presented the criminal complaint to the City Court Judge who, evidently, found its allegations to establish probable cause for the issuance of an arrest warrant. (See Dkt. 27-16). This detail, coupled with the additional fact that the issue raised is a matter of constitutional law, which is "not one officers could be expected to identify at 'a simple glance,' " further supports the conclusion that any *321 error committed by the Individual Defendants was not unreasonable. See Barboza, 676 Fed.Appx. at 15 (quoting Messerschmidt, 565 U.S. at 555, 132 S.Ct. 1235 ).
Additionally, because the doctrine of qualified immunity "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability," Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013) (quoting Messerschmidt, 565 U.S. at 546, 132 S.Ct. 1235 ), the court must use "a deliberately 'forgiving' standard of review" in determining its application. Id. (quoting Amore, 624 F.3d at 530 ). To this point, "[a]n officer is entitled to qualified immunity if he can establish that there was 'arguable probable cause' to arrest." Adebiyi v. City of New York, No. 13-CV-480 (WFK) (CLP), 2014 WL 4922888, at *5 (E.D.N.Y. Sept. 30, 2014) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ). Arguable probable cause is an "analytically distinct test for qualified immunity" that "is more favorable to the officers than the one for probable cause." Escalera, 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) ).
The Court finds that Plaintiff's posts, which included derogatory and exceedingly vulgar attacks against Captain Leo, and that evinced a desire to "punish" him in some manner, comfortably fall within the scope of the previous version of the aggravated harassment statute. Specifically, Plaintiff posted statements that described Captain Leo as a "liar," "a sociopath, a [k]leptomaniac," "a compulsive liar," "abusive," "tormentive," and "sick." (Dkt. 27-9 at 20; see Dkt. 27-2 at ¶ 11; Dkt. 30-1 at ¶ 11). Plaintiff also posted that Captain Leo and his "disgusting pigpen at parasite hall are going to pay for your crime." (Dkt. 27-2 at ¶ 16; Dkt. 30-1 at ¶ 16). Plaintiff indicated that he was going to "enjoy punishing [Captain Leo] and [y]our gang in every conceivable way." (Dkt. 27-2 at ¶ 17; Dkt. 30-1 at ¶ 17; see Dkt. 27-10 at 19). Furthermore, Plaintiff posted photographs of Captain Leo and called him vulgar and derogatory names, such as a "psychopathic pig fucker" (Dkt. 27-10 at 18; see Dkt. 27-2 at ¶ 15; Dkt. 30-1 at ¶ 15), and Plaintiff invited others to submit comments about Captain Leo online as well (Dkt. 27-10 at 20). Plaintiff even testified that had Captain Leo read the posted statements, he "might" find them annoying. (Id. at 19-20; see Dkt. 27-2 at ¶ 18; Dkt. 30-1 at ¶ 18). Thus, the Court easily finds that it was "objectively reasonable for the [Individual Defendants] to believe that probable cause existed." Escalera, 361 F.3d at 743 (quotation marks omitted).
However, under the circumstances in this case, the Court also finds that actual "probable cause" existed to charge and arrest Plaintiff under the second degree aggravated harassment statute. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " Id. (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ). The "caselaw has given § 240.30 a wide ambit." Adebiyi, 2014 WL 4922888, at *7 (collecting cases); see Quinn v. City of New York, No. 99 CV 7068 JBW, 2003 WL 1090205, at *3 (E.D.N.Y. Mar. 12, 2003) ("Courts have interpreted the statute broadly."). Indeed, a number of cases have held that an arrest was justified by actual probable cause under circumstances involving communications equally or even less alarming than those found in the instant matter. See *322 Silver v. Kuehbeck, 217 Fed.Appx. 18, 22 (2d Cir. 2007) (finding that alleged facts "clearly" established probable cause for an arrest under § 240.30(1) where the plaintiff "attempted to contact [the defendant] and left messages 'about her evident lack of consideration and disrespect' "); Leibovitz v. City of New York, No. 14 Civ. 3297 (RA) (JCF), 2016 WL 3671232, at *5 (S.D.N.Y. Mar. 17, 2016) (finding that "probable cause" to arrest under § 240.30(1) was sufficiently established where it was alleged that "the plaintiff called [a third party] and left her numerous voice messages wherein he threatened to sue her," and that these calls caused the third party " 'annoyance and alarm' "), report and recommendation adopted, No. 14-CV-3297 (RA), 2016 WL 3661530 (S.D.N.Y. July 1, 2016), appeal dismissed (2d Cir. 16-2434 Oct. 7, 2016); Dzwonczyk v. Syracuse City Police Dep't, 710 F.Supp.2d 248, 266 (N.D.N.Y. 2008) (finding probable cause to arrest under § 240.30(1) where the plaintiff repeatedly communicated that the recipient " 'needed to find God and that [he] was a Devil worship[ ]er' "). Accordingly, the Court also finds that the Individual Defendants held "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera, 361 F.3d at 743 (quotation marks omitted).
Given the nature and substance of Plaintiff's Internet posts, it was "objectively reasonable for [the Individual Defendants] to conclude that they could rely on [the] written communications ... to establish probable cause for the [arrest] warranty." Pacherille, 619 Fed.Appx. at 19. Therefore, because Plaintiff's right to free speech was not clearly established at the time the criminal complaint was filed or at the time Plaintiff was arrested upon those charges, the Court concludes that the Individual Defendants are entitled to qualified immunity, and summary judgment is warranted in favor of Defendants on Plaintiff's fourth cause of action.
2. Plaintiff's First and Second Causes of Action for Malicious Prosecution and False Arrest Under § 1983
Similarly, because "the undisputed facts establish that [Plaintiff]'s arrest and prosecution were supported by arguable probable cause, ... the [I]ndividual [D]efendants are entitled to qualified immunity on [Plaintiff]'s false arrest and malicious prosecution claims as a matter of law." Diop v. City of New York, 50 F.Supp.3d 411, 425 (S.D.N.Y. 2014) ; see Castro v. County of Nassau, 739 F.Supp.2d 153, 172 (E.D.N.Y. 2010) (finding that "there are no triable issues of fact as to whether [the defendant] had arguable probable cause," and thus, the defendant was "entitled to qualified immunity on the false arrest and malicious prosecution claims"); Hardin v. Meridien Foods, No. 98 CIV. 2268 (BSJ), 2001 WL 1150344, at *6 (S.D.N.Y. Sept. 27, 2001) (stating that "the Court applies the same standard used to evaluate qualified immunity in the false arrest context" as in the malicious prosecution context). Indeed, as stated above, the Court finds that the Individual Defendants had "actual probable cause," even though all that is necessary for a qualified immunity defense is "arguable probable cause." See Gaston v. City of New York, 851 F.Supp.2d 780, 795-96 (S.D.N.Y. 2012) ("[S]ince [the defendant detective] had actual probable cause but only need[ed] to have had arguable probable cause to be entitled to qualified immunity, [the defendant detective] is entitled to summary judgment on [the plaintiff]'s false arrest ... and malicious prosecution claims on qualified immunity grounds.").
Accordingly, to the extent that Plaintiff asserts § 1983 causes of action for malicious prosecution and false arrest against the Individual Defendants in their individual capacity, summary judgment is warranted *323 in favor of Defendants on qualified immunity grounds.
D. Plaintiff's Fifth and Sixth Causes of Action for Assault and Battery Fail to State a Cognizable Claim for Relief Under § 1983
At the outset, the Court notes that Plaintiff has alleged separate assault and battery causes of action under § 1983 and New York State common law. (See Dkt. 1 at 9-11). The Court has not found any case that recognizes either an assault or a battery claim grounded in § 1983, and Plaintiff's counsel failed to provide a satisfactory reason during oral argument for recognizing federal assault and battery claims in this context. See Henderson v. Williams, No. 3:10-CV-1621 (JCH), 2013 WL 1984545, at *3 n.3 (D. Conn. May 13, 2013) ("To the extent that [the plaintiff] believes he has raised claims for the torts of assault and battery, the court disagrees because ... there is no federal common law claim for assault or battery."). Instead, it is the Court's view that Plaintiff's fifth and sixth causes of action, alleging an assault and battery under § 1983, respectively, are properly formulated as excessive force claims. However, Plaintiff's counsel conceded at oral argument that the complaint does not allege a § 1983 excessive force claim. (See also Dkt. 27-10 at 31 (Plaintiff testifying that he is not alleging a § 1983 excessive use of force claim) ).
Indeed, it is apparent why Plaintiff concedes he is not asserting such a claim. The only physical affliction that Plaintiff apparently suffered as a result of the arrest was some temporary "discomfort" from being handcuffed, but he did not receive any injuries from the handcuffs. (Dkt. 27-10 at 29); see Arnold v. Westchester County , No. 09 Civ. 3727 (JSR) (GWG), 2012 WL 336129, at *9 (S.D.N.Y. Feb. 3, 2012) ("[T]here is a consensus among courts in this [C]ircuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." (quotation marks and citations omitted) ), report and recommendation adopted , No. 09 Civ. 3727 (JSR), 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012) ; Lynch ex rel. Lynch v. City of Mount Vernon, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008) (same). Plaintiff admits that he did not need any professional medical or psychiatric treatment as a result of any injury he may or may not have sustained from the arrest. (Dkt. 27-2 at ¶ 7; Dkt. 30-1 at ¶ 7; see Dkt. 27-10 at 7 (stating that he was not seeking damages for physical injuries) ); see also Regels v. Giardono, 113 F.Supp.3d 574, 599 (N.D.N.Y. 2015) ("[A] de minimis use of force will rarely suffice to state a constitutional claim. Moreover, de minimis injury can serve as conclusive evidence that de minimis force was used." (quotation marks and citation omitted) ); O'Leary v. City of New York, 938 F.Supp.2d 410, 415-16 (E.D.N.Y. 2013) ("[The p]laintiff alleges that he was subjected to assault, battery, and excessive force. However, [the p]laintiff's sole allegation of force is that he was searched and handcuffed. [The p]laintiff does not allege that any other force was used against him, nor does he allege that he was injured. It is well-established that a search and handcuffing of an arrestee, without more, is insufficient to support a federal claim for excessive force." (citations omitted) ).
Therefore, summary judgment should be granted in favor of Defendants on Plaintiff's fifth and sixth causes of action.
E. The Individual Defendants are Entitled to Qualified Immunity as to Plaintiff's Third Cause of Action for the Failure to Intercede to Prevent an Unconstitutional Act Under § 1983
" 'It is widely recognized that all law enforcement officials have an affirmative *324 duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' " Usavage v. Port Auth. of N.Y. & N.J., 932 F.Supp.2d 575, 599 (S.D.N.Y. 2013) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ). "[A]n officer is entitled to qualified immunity unless his failure to intercede was under 'circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate [the plaintiff's] rights.' " Holland v. City of New York, 197 F.Supp.3d 529, 549 (S.D.N.Y. 2016) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) ). "Moreover, the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." Matthews v. City of New York, 889 F.Supp.2d 418, 443-44 (E.D.N.Y. 2012). Thus, "[i]f the Court determines that the officer's conduct did not violate a constitutional right, ... the analysis ends." Feinberg v. City of New York, No. 99CV12127(RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) (citing Saucier, 533 U.S. at 201, 121 S.Ct. 2151 ).
Here, Plaintiff's failure to intervene claim is grounded upon his false arrest and assault and battery causes of action, as well as the alleged use of force that occurred during his arrest. (Dkt. 1 at ¶ 55). However, Plaintiff's failure to intervene claim fails because the Court has determined that Plaintiff's arrest and prosecution were supported by probable cause, there is no record proof indicating that the Individual Defendants were present during the arrest-which was affected by law enforcement authorities in a neighboring jurisdiction-and the force used in affecting the arrest was not excessive. See Williams v. City of New York, No. 14-CV-7158 (JPO), 2016 WL 3194369, at *6-7 (S.D.N.Y. June 7, 2016) (holding that where "there was at least arguable probable cause to arrest [the plaintiff,] ... it cannot be said that [the d]efendants' failure to intervene was objectively unreasonable" (internal quotation marks and citations omitted) ); Holland, 197 F.Supp.3d at 549 (holding that where one defendant was entitled to qualified immunity for the alleged constitutional violation, this conclusion applied "equally" to the other defendants under a failure to intercede claim "because they too would not reasonably have known that [the plaintiff]'s constitutional rights were being violated"); Coleman v. City of New York, No. 07 Civ. 1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010) (finding that where the force used resulted in only a "transitory and de minimis" injury, "there was no constitutional violation" and any claims against other officer defendants who "applied no force at all," and "could only be liable for failure to intervene when confronted with an unlawful application of force," were dismissed); Lucky v. City of New York, No. 03 Civ.1983(DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (finding that the claims for failure to intervene to prevent an arrest and to prevent excessive force failed where the arrest and prosecution was supported by probable cause, and the defendants were not present at the time of the alleged use of force), aff'd, 140 Fed.Appx. 301 (2d Cir. 2005) ; Feinberg, 2004 WL 1824373, at *4 ("[S]ince [the d]efendants had probable cause to arrest and charge the [p]laintiff, [the d]efendants' motion for summary judgment on this claim [for failure to intercede] is granted.")
Therefore, the Court also concludes that summary judgment should be granted in favor of Defendants on the third cause of action on qualified immunity grounds.
*325 F. Probable Cause Mandates Summary Judgment in Favor of Defendants on Plaintiff's Seventh and Eighth Causes of Action for Common Law Malicious Prosecution and False Arrest
Initially, the Court notes that "[t]he doctrine of qualified immunity is generally understood to only protect government officials from federal, not state, causes of action." Alhovsky v. Ryan, 658 F.Supp.2d 526, 535 (S.D.N.Y. 2009) (citing Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007) ), aff'd sub nom. Alhovsky v. Paul, 406 Fed.Appx. 535 (2d Cir. 2011). Although "a similar doctrine exists under New York common-law," Jenkins, 478 F.3d at 86 ; see Tsesarskaya v. City of New York, 843 F.Supp.2d 446, 462 n.12 (S.D.N.Y. 2012) (" 'Good faith immunity' under New York law is similar to qualified immunity under federal law." (quoting Jenkins, 478 F.3d at 86 ) ), Defendants have failed to explicitly raise this argument in their motion papers. However, Defendants have correctly argued that the presence of probable cause is an absolute defense to claims for malicious prosecution and false arrest. (See Dkt. 27-23 at 14, 19-20). Under New York law, "[t]he absence of probable cause is an essential element of a claim for malicious prosecution." McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) ; see Drummond v. Castro, 522 F.Supp.2d 667, 677 (S.D.N.Y. 2007) ("[T]he presence of probable cause is a complete defense to an action for malicious prosecution under § 1983 or state law."). Although the "[l]ack of probable cause is not an essential element" to establishing false arrest, Williams v. City of New York, No. 14-cv-5123 (NRB), 2015 WL 4461716, at *4 (S.D.N.Y. July 21, 2015) (citations omitted), "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest...." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quotation marks and citations omitted); see Jenkins, 478 F.3d at 84 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation marks and citation omitted) ).
Accordingly, because the Court has determined that the Individual Defendants had probable cause based upon the then-existing aggravated harassment in the second degree statute, summary judgment is granted in favor of Defendants on Plaintiff's seventh and eighth causes of action for common law malicious prosecution and false arrest.
G. Summary Judgment is Warranted in Favor of Defendants on Plaintiff's Common-Law Claims for Assault and Battery
Plaintiff provides little factual support for his assault and battery causes of action. Plaintiff's responsive argument to Defendants' motion is simply that because there are questions of fact relating to the lawfulness of the arrest, there must also be questions of fact as to the assault and battery charges. (See Dkt. 30 at 16).
Under New York law, " '[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.' " 5 Borough Pawn, LLC. v. Marti, 753 F.Supp.2d 186, 201 (S.D.N.Y. 2010) (quoting Sulkowska v. City of New York, 129 F.Supp.2d 274, 294 (S.D.N.Y. 2001) ). "An arrest is lawful if made pursuant to a warrant or based upon probable cause." Stone v. Port Authority of New York and New Jersey, 2014 WL 3110002, at *6 (E.D.N.Y. July 8, 2014). "A lawful arrest is not an assault or battery under New York law, provided the force used is reasonable."
*326 Figueroa v. Mazza, 825 F.3d 89, 105 n.13 (2d Cir. 2016). "As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest." Tianshu Li v. United States, No. 05 Civ. 6237 (NRB), 2009 WL 3321014, at *1 n.2 (S.D.N.Y. Oct. 8, 2009) (citing Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991) ). "[E]xcept for § 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same." Cabral v. City of New York, No. 12 Civ. 4659 (LGS), 2014 WL 4636433, at *10 (S.D.N.Y. Sept. 17, 2014) (quotation marks and citation omitted), aff'd, 662 Fed.Appx. 11 (2d Cir. 2016).
First, although Plaintiff alleges that the Individual Defendants ordered their "subordinates" to arrest Plaintiff (Dkt. 1 at ¶¶ 96-99), Plaintiff testified that law enforcement authorities in a neighboring jurisdiction arrested him (see Dkt. 27-10 at 24-25), and there is no evidence that Captain Leo and Detective Lakso were even present during the arrest. See, e.g., Cruz v. City of New York, 232 F.Supp.3d 438, 455-56 (S.D.N.Y. 2017) (finding that the defendant was not personally involved in the arrest where the plaintiff had already been handcuffed and placed on the ground before the officer arrived, even though the officer then "transported [the plaintiff] to the precinct and signed the Criminal Complaint against [the plaintiff]"); Crews v. County of Nassau, 996 F.Supp.2d 186, 213 (E.D.N.Y. 2014) (granting summary judgment in favor of some of the defendants on the plaintiff's assault and battery claims where "[t]here is simply no evidence that any other defendant actually participated in [the] plaintiff's arrest" (footnote omitted) ); De Ratafia v. County of Columbia, No. 1:13-CV-174 (NAM/RFT), 2013 WL 5423871, at *9 (N.D.N.Y. Sept. 26, 2013) ("In the absence of factual allegations establishing that defendant Harrison was personally involved in the alleged state law torts of assault[ and] battery, ... these claims ... also fail to state a cause of action under New York law.").
Second, Plaintiff's argument that there is a question of fact as to whether the arrest was lawful is undermined by the fact that Plaintiff's arrest by law enforcement authorities was supported by probable cause for the charged conduct. See Figueroa, 825 F.3d at 105 n.13 ; see also Virginia v. Moore, 553 U.S. 164, 177, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) ("[W]e have equated a lawful arrest with an arrest based on probable cause."); United States v. Diaz, 122 F.Supp.3d 165, 171 (S.D.N.Y. 2015) ("For purposes of the Fourth Amendment, a lawful arrest requires probable cause."), aff'd, 854 F.3d 197 (2d Cir. 2017).
Accordingly, because there is no evidence that the Individual Defendants effectuated Plaintiff's arrest, and since that arrest was supported by probable cause, the fact that Plaintiff was arrested fails to raise an issue of material fact in support of his common law assault and battery claims. Furthermore, as noted above, Plaintiff has not alleged any physical injury from his arrest, and simply indicated that he experienced temporary discomfort from the application of handcuffs. (See Dkt. 27-2 at ¶ 7; Dkt. 30-1 at ¶ 7; see Dkt. 27-10 at 7, 29). As noted above in relation to Plaintiff's fifth and sixth causes of action, the use of this de minimis force to affect a lawful arrest was reasonable. See Ladoucier v. City of New York, No. 10 CIV. 05089 (RJH), 2011 WL 2206735, at *7 (S.D.N.Y. June 6, 2011) (dismissing the plaintiff's assault and battery claims because there was no indication that the use of handcuffs amounted to excessive force *327 during his lawful arrest); Bourne v. County of Nassau, No. CV 05-6067 (ARL), 2009 WL 152658, at *8 (E.D.N.Y. Jan. 20, 2009) (dismissing the plaintiff's assault claim where she failed to provide any evidence of excessive force arising from her lawful arrest); see also Cunningham v. United States, 472 F.Supp.2d 366, 381 (E.D.N.Y. 2007) ("[W]here there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable."), opinion corrected (Feb. 2, 2007).
Therefore, summary judgment is granted in favor of Defendants on Plaintiff's ninth and tenth causes of action.
H. Plaintiff's Remaining Causes of Action Against the City Must be Dismissed
Finally, it is well established that "there can be no imposition of vicarious liability in the absence of underlying liability." Shapiro v. Kronfeld, No. 00 Civ.6286(RWS), 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004). Plaintiff grounds all of his assertions of liability against the City upon the principle of respondeat superior. (Dkt. 1 at 11-13). Accordingly, because each of the claims asserted against the Individual Defendants have been dismissed as a matter of law, the causes of action asserted against the City are also dismissed. See Fiedler v. Incandela, 222 F.Supp.3d 141, 169 (E.D.N.Y. 2016) ("Having concluded that the [i]ndividual [d]efendants are entitled to judgment as a matter of law with respect to [the p]laintiff's claims arising under New York law, the [c]ounty [d]efendants are also entitled to judgment as a matter of law with respect to [the p]laintiff's claims for vicarious liability.").
CONCLUSION
For the forgoing reasons, Defendants' motion for summary judgment (Dkt. 27) is granted, and Plaintiff's complaint (Dkt. 1) is dismissed with prejudice.
SO ORDERED.

The following facts are taken from Defendants' Rule 56.1 Statement of Material Facts (Dkt. 27-2), Plaintiff's Response to Defendants' Rule 56.1 Statement of Material Facts (Dkt. 30-1), Plaintiff's deposition (Dkt. 27-10), Captain Leo's deposition (Dkt. 27-17), and Detective Lakso's deposition (Dkt. 27-18), unless otherwise indicated.

The testimony indicates that the delay in executing the arrest warrant may have been caused by the fact that law enforcement authorities had some difficulty determining Plaintiff's location at the time. (Dkt. 27-17 at 19; see Dkt. 27-2 at ¶ 41; Dkt. 30-1 at ¶ 41).

The statute has since been amended. See N.Y. Penal Law § 240.30(1)(a).

The Court notes that Plaintiff has not alleged any municipal policy or custom that would form the basis of a claim against the City under the framework of Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. (See Dkt. 1). In Monell, the Supreme Court explained:
the language of § 1983... compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.
Monell, 436 U.S. at 691, 98 S.Ct. 2018. Indeed, Defendants posit this as one reason to dismiss the claims asserted against the City. (Dkt. 27-23 at 7-10). Notably, Plaintiff's response does not rebut this assertion, and instead, argues only that each of the claims asserted against the City is based on state common law principles, and thus, is properly based upon a theory of respondeat superior. (See Dkt. 30 at 16). The Court agrees that no municipal policy or custom is required to assert common law claims against a municipal defendant under a theory of vicarious liability. See Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012) ("No municipal custom or policy need be proven to establish the liability of the [c]ity for violation of ... state law, for '[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.' " (quoting Tango v. Tulevech, 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983) ) ); L.B. v. Town of Chester, 232 F.Supp.2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior .").

Defendants suggest that there are three prongs under this analysis pursuant to X-Men Sec., Inc. v. Pataki, 196 F.3d 56 (2d Cir. 1999). The third prong is intended to determine whether "the defendant's action was objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken." X-Men Sec., Inc., 196 F.3d at 66 (quotation marks and citation omitted). For a time, courts in this Circuit struggled with whether a third prong existed or whether the "reasonableness" analysis was incorporated within the second prong. See Bailey v. Pataki, 708 F.3d 391, 404 n.8 (2d Cir. 2013) ("There is some tension in our Circuit's cases as to whether the qualified immunity standard is of two or three parts, and whether the 'reasonable officer' inquiry is part of step two-the 'clearly established' prong-or whether it is a separate, third step in the analysis."). However, the Supreme Court has since explained that "[i]n resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry," Tolan v. Cotton, --- U.S. ----, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014), and recent Second Circuit case law reflects this clarification in the law. See Ganek v. Leibowitz, 874 F.3d 73, 80 (2d Cir. 2017) ; Johnson v. Perry, 859 F.3d 156, 169-70 (2d Cir. 2017) ; Barboza v. D'Agata, 676 Fed.Appx. 9, 12 (2d Cir. 2017) ; McGowan v. United States, 825 F.3d 118, 124 (2d Cir. 2016). In other words, whether a defendant's actions were "objectively legally reasonable" is considered in the context of the clarity of the legal rules at the time of the purportedly unlawful conduct.